UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Cause No. 1:17-cr-0222-JMS-TAB-11 |
| | ) |
| JAMES BEASLEY, et. al. | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT JAMES BEASLEY'S BRIEF IN SUPPORT OF HIS RENEWED MOTION FOR JUDGMENT OF ACQUITTAL UNDER FED. R. CRIM. P. 29(c)**

Comes now Defendant, JAMES BEASLEY ("Beasley"), by counsel, and in support of his renewed Motion for Judgment of Acquittal under Fed. R. Crim. P. 29(c) (the "Motion") respectfully states and avers as follows:

**I. Brief Procedural Background.**

By way of Superseding Indictment dated September 12, 2018 (the "Indictment"), Beasley faced three (3) criminal charges in this Case: Count 1, Conspiracy to Distribute Methamphetamine under 21 U.S.C. §846 and Counts 16 and 17, Possession of Methamphetamine with Intent to Distribute under 21 U.S.C. §841(a)(1) (collectively the "Charges"). See generally Dkt 280. The conspiracy charged in Count 1, according to the Government's best evidence, is alleged to have occurred between the period August 27, 2016 through November 17, 2017 (the "Conspiracy"). Id. The Government's allegations as to Beasley's involvement in the alleged conspiracy encompass, literally, an eight (8) day period, September 3, 2017[1] - September 11, 2017. See, generally, Trial Testimony of David Carrol

---

[1] According to trial testimony and the Government's evidence, Beasley first purchased

("Carroll Tr. Test."), July 31, 2017 and August 1, 2017; Govt. Ex. ___. On or about September 3, 2017, the Government alleges that David Carroll, a charged and now cooperating member of the Conspiracy ("Carroll"), first sold two (2) ounces of Methamphetamine to Beasley for cash. Carroll Tr. Test., July 31, 2017 and August 1, 2017. Beasley's involvement, according to the evidence introduced by the Government in a light most favorable to the Government, ended on September 11, 2017 after Carroll had allegedly sold three (3) ounces of Methamphetamine to Beasley shortly before a vehicle in which Beasley was a passenger was interdicted.[2]

Trial of these matters was held July 29, 2019 – August 15, 2019. See generally Dkts 834 – 838, 842, 844-846, 848, 859-862.

The Government closed its case on August 13, 2019. Dkt. 859. After the Government closed its case, Beasley moved for Judgment of Acquittal under Fed. R. Crim. P. 29(a) both orally and in writing; argument was heard but Beasley's motion was denied. Dkts. 855-856, 859.

The Jury returned a verdict of guilty as to Beasley on Counts 1, 16, and 17 on August 19, 2019. See Dkt. 864 at pp. 21-24.

## II. Trial Facts as to Beasley and Counts 1, and 16-17.

Examining the evidence introduced by Government at trial in a light most favorable to the Government (as is required in any Rule 29(c) analysis (see below)), Beasley's first contact with Carroll, the only "member" of the nearly twenty (20) plus individuals involved in the charged conspiracy, occurred on or about August 27, 2017 when Beasley's text message and phone call to Carroll regarding the purchase of marijuana were intercepted by Government pursuant to a wire tap obtained on Carroll's phone (Phone IV for the purposes of the evidence

---

methamphetamine from David Carroll on September 3, 2017 following an initial phone call (regarding the purchase of meth) from Beasley to Carroll on September 1, 2017.
[2] The same traffic stop that Beasley contested, pre and at trial by way of renewal of Beasley's Motion in Limine (Dkt 762) and corresponding objections.

introduced by the Government at trial). Carroll Tr. Test., August 1, 2017. The substance of Beasley's August 27, 2017 "conversations" with Carroll was clearly the purchase of an unknown quantity of marijuana; Carroll acknowledged this during his August 1, 2019 testimony on cross examination. Carroll Tr. Test., August 1, 2017.

Working backwards, chronologically, through the facts as introduced by the Government at trial as to Beasley only, on September 11, 2017, Marion County Sheriff's Deputy Sgt James Barker ("Barker"), assisted by Indianapolis Metropolitan Police Department ("IMPD") officers Michael O'Day ("O'Day") and a third officer, assisted with an interdiction traffic stop of a yellow Chevy with Indiana License plate number TIO921 (the "Vehicle"). See Barker Trial Testimony ("Barker Tr. Test."), August 1, 2017.[3] The Vehicle, even more specifically described by West as a yellow Chevy Cavalier with flames, was stopped by Barker, who determined the driver to be Susan Koch ("Koch"). Id. Barker (and West) testified that though West was conducting surveillance on Carroll and believed Beasley to have just exited Carroll's apartment following a drug transaction, thus triggering the interdiction stop, the stop of the Vehicle was further "justified" because the Vehicle crossed the double yellow line while traveling south bound on North Sherman, Indianapolis (Marion County), Indiana and the Vehicle was observed

---

[3] There was conflicting testimony regarding the interdiction stop; specifically, IMPD officer Malachi West ("West"), who was conducting surveillance of Carroll's apartment at 3433 Central Avenue, Constitution Gardens Apartments, testified that Barker assisted O'Day. See West Trial Testimony, August 1, 2019. In fact. West even testified that he never lost site of the Cavalier after it left Carroll's apartment and that he observed O'Day stop the Vehicle. Id. However, Barker testified that he made the interdiction stop on the vehicle in which Beasley was a passenger and was assisted by IMPD Officers O'Day and a third IMPD officer that arrived at the stop even prior to O'Day's arrival. Barker Tr. Test., August 1, 2019. Anecdotally, an FBI report regarding the Beasley traffic stop was referenced and filed in support of Beasley's Motion in Limine (Dkt   ) also stated that O'Day made the stop and was assisted by Barker. See Dkt 762 and attachments.

by officers traveling 50 mph in a 35-mph zone on south bound left of center at the 3200 block of Central.  Id.

After stopping the Vehicle, Barker approached the driver's side of the Vehicle and made contact with Koch; while speaking with Koch, Barker allegedly smelled the odor of raw marijuana coming from the interior of the vehicle.  Barker Tr. Test., August 1, 2019.  Barker then had Koch and Beasley, the front seat passenger, exit the Vehicle.   Reluctantly, on cross examination, Barker likewise testified that the third assisting IMPD officer effected a pat down search of Beasley but did not locate any contraband on Beasley's person.  Id.

After Koch and Beasley had been removed from the Vehicle, Beasley had been patted down (with no contraband discovered), O'Day then arrived on the scene, spoke with Koch, and told Koch he had probable cause to search the Vehicle because Barker (and, apparently, O'Day) smelled raw marijuana coming from the inside of the Vehicle.[4]  Id.  Barker testified that O'Day advised Koch (and Beasley) of their *Pirtle* and *Miranda* warnings; Barker testified that Koch then consented to the search of the Vehicle.  Id.

According to Barker, Koch told O'Day there was marijuana in her purse and marijuana was recovered from her purse from a plastic baggie in a red container in Koch's purse.  Id. O'Day and Barker then searched the Vehicle and, pursuant to that search, O'Day located a set of digital scales, with a white crystal substance on it, under the front passenger seat of the Vehicle. Id.  Barker stated that Beasley admitted the scales belonged to him and Beasley was then placed in handcuffs because Barker (and, apparently, O'Day) believed the white substance located on the scales was methamphetamine.  Id.

---

[4] O'Day was not called as a witness in the Government's case; likewise, the third officer involved in Bealey's interdiction stop that conducted the initial pat down of Beasley also did not testify for the Government.  See generally, August 1, 2019 trial testimony.

Following a second pat down of Beasley, according to Barker's trial testimony, O'Day allegedly located (a) a grey plastic bag containing an unknown greyish substance (suspected heroin) from Beasley's sweatshirt, (b) a clear plastic baggie containing vegetation (suspected marijuana) from Beasley's waistband, (c) a clear plastic baggie with three (3) separate clear baggies containing a white crystal substance (suspected methamphetamine) also from Beasley's waistband. Id. It was determined that the Methamphetamine located on Beasley was just over eighty-three grams (less than three (3) ounces). Id. Barker attempted (and, ultimately, did) make in court identification of Beasley but only after Barker had first identified co-defendant Richard Grundy, III's counsel, Kenneth Riggins, as Beasley. Barker Tr. Test., August 1, 2019.

Koch was ultimately released on a summons for possession of marijuana; no traffic citations were issued to Koch, however, for the alleged traffic violations to which West and Barker testified Koch committed. Barker Tr. Test., August 1, 2019.

After the traffic stop was completed, Koch allegedly consented to the search of her residence at 4801 London Drive, Indianapolis, Indiana (the "Property"). Trial Testimony of IMPD detectives Mark Kunst ("Kunst") and Edward Bruce ("Bruce"), August 1, 2019. Kunst further testified, over Beasley's objection, that Koch informed Kunst that Beasley had spent the previous night (i.e., September 10, 2017) at the Property. Kunst Tr. Test., August 1, 2017. Thereafter, Bruce located three (3) ounces of methamphetamine in three (3) baggies inside a black, men's shoebox, inside a Hangtime store bag. Bruce Tr. Test., August 1, 2019.

According to the August 1, 2019 trial testimony of IMPD/FBI officer Patrick Bragg ("Bragg"), on September 5, 2017, while conducting surveillance on Carroll and Carroll's Orange Dodge truck, Carroll's truck was observed at Hangtime, a retail store located at East 38th Street in Indianapolis, Indiana, next to a yellow Cavalier. Bragg Tr. Test., August 1, 2019. Bragg

observed a black male exit the Cavalier and get into Carroll's truck and, as Bragg was circling the block, the black male who had exited the Cavalier had gotten back in the Cavalier and both vehicles (Carroll's and the Cavalier), left the location. Id. Bragg testified on cross that he did not observe either Carroll or the black male from the Cavalier enter Hangtime. Id.

Carroll testified that he sold methamphetamine to Beasley on three (3) occasions: (a) September 3, 2017 (2 ounces), (b) September 10, 2017 (7 ounces), and (c) September 11, 2017 (3 ounces); Carroll testified that Beasley always paid cash on the barrel for the methamphetamine Beasley purchased and that Beasley owed Carroll no money. Carroll Tr. Test., July 31, 2017 – August 1, 2017. Carroll further testified that (a) he never sold heroin to Beasley and (b) that he sold marijuana to Beasley, including on August 27, 2017. Id.

It cannot be overlooked that, Carroll is an inherently biased witness for the Government because after Carroll had the opportunity to review discovery and confer with counsel, Carroll entered into a plea agreement with the Government by which Carroll was to testify on behalf of the Government, against Beasley (and others) and in return receive a vastly reduced sentence from the potential of life to, potentially, fewer than eight (8) total years. Carroll Tr. Testimony, July 31, 2017 and August 1, 2017.

### III. Argument.

**A.    Rule 29(c) Motion – Standard.**

Rule 29(c) states:

> "… (c) After Jury Verdict or Discharge.
>      (1) *Time for a Motion.* A defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict or after the court discharges the jury, whichever is later.
>      (2) *Ruling on the Motion.* If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal. If the jury has failed to return a verdict, the court may enter a judgment of acquittal.

6

>    (3) *No Prior Motion Required.* A defendant is not required to move for a judgment of acquittal before the court submits the case to the jury as a prerequisite for making such a motion after jury discharge."

An accused in a criminal case who has been found guilty by a jury may move for a judgment of acquittal under Fed. R. Crim. P. 29(c).  See Fed R. Crim. P. 29(c); *United States v. Helton*, WL2680468 (N.D. Ill. 2011).  Where, as here, if the accused is challenging the sufficiency of the evidence presented at trial, the court must "consider the evidence in the light most favorable to the prosecution, drawing all reasonable inferences in the government's favor," and a "[r]eversal is appropriate only when, after viewing the evidence in such a manner, no rational jury 'could have found the defendant to have committed the essential elements of the crime.'" *Helton*, WL2680468 (N.D. Ill. 2011) citing *United States v. Macari,* 453 F.3d 926, 936 (7th Cir.2006) (quoting *United States v. Masten,* 170 F.3d 790, 794 (7th Cir.1999)); *see also United States v. Moses,* 513 F.3d 727, 733 (7th Cir.2008) (stating that "[a] district court should grant a motion for a judgment of acquittal only when there is insufficient evidence to sustain a conviction"); *United States v. Pree,* 408 F.3d 855, 865 (7th Cir.2005) (stating that a motion for acquittal should be granted "only if, viewing the evidence in the light most favorable to the Government, no rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt").

Moreover, a Rule 29 motion calls on the court to distinguish between reasonable inferences and speculation.  *United States v. Jones*, 713 F.3d 336, 340 (7th Cir. 2013).  The government may not prove its case, as we have said, with "conjecture camouflaged as evidence." *Jones*, 713 F3d at 340 quoting *Piaskowski v. Bett,* 256 F.3d 687, 693 (7th Circ. 2001). Each step in the inferential chain must be supported by evidence that allows the jury to "draw reasonable inferences from basic facts to ultimate facts." *Jones*, 713 F.3d **at 340 citing** *Coleman*

7

*v. Johnson,* 566 U.S. ––––, ––––, 132 S.Ct. 2060, 2064, 182 L.Ed.2d 978 (2012). "Although a jury may infer facts from other facts that are established by inference, each link in the chain of inferences must be sufficiently strong to avoid a lapse into speculation." *Piaskowski,* 256 F.3d at 693.

This Court must view the evidence in the light most favorable to the Government. *United States. v. Weed*, 689 F2d 752, 756 (7th Cir. 1982) citing *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Velasco*, 471 F.2d 112, 115 (7th Cir. 1972). The test that this Court must use is whether at the time of the motion there was relevant evidence from which the jury could reasonably find (the defendant) guilty beyond a reasonable doubt. *United States. v. Weed*, 689 F2d at 756 quoting *United States v. Blasco*, 581 F.2d 681, 684 (7th Cir.), cert. denied, 439 U.S. 966, 99 S.Ct. 456, 58 L.Ed.2d 425 (1978). This standard to be applied to the evidence in a motion for judgment of acquittal was repeated in *United States v. Beck*, 615 F.2d 441, 448 (7th Cir. 1980).

The Beck court also referred to the test developed by the Fifth Circuit as outlined in *United States v. Fearn*, 589 F.2d 1316, 1321 (7th Cir. 1978): "In the Fifth Circuit a slightly more precise, but equivalent, test has been developed. There the test of the sufficiency of proof on a motion for judgment of acquittal or review of the denial of such a motion, is whether the jury might reasonably conclude that the evidence is inconsistent with the hypothesis of the defendant's innocence." *United States. v. Weed*, 689 F.2d at 756 quoting *United States v. Fearn*, 589 F.2d at 1321; *United States v. Lonsdale*, 577 F.2d 923, 925 (5th Cir. 1978). A, perhaps more simple, restatement of the same rule is that the motion for judgment of acquittal must be granted when the evidence, viewed in the light most favorable to the Government, is so scant that the jury could only speculate as to the defendant's guilt, and is such that a reasonably-minded

jury must have a reasonable doubt as to the defendant's guilt. . *United States. v. Weed*, 689 F2d at 757 citing *United States v. Herberman*, 583 F.2d 222 (5th Cir. 1978); *United States v. Stephenson*, 474 F.2d 1353, 1355 (5th Cir. 1973).

Perhaps even more succinctly, the standard for evaluating a Rule 29 motion for judgment of acquittal is the same as the due process standard used in evaluating whether the evidence is sufficient to sustain the verdict: whether viewing all the evidence in the light most favorable to the government, any rational juror could find the defendant guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). "Although Jackson requires the reviewing court initially to construe all evidence in favor of the government, the evidence so construed may still be so supportive of innocence that no rational juror could conclude that the government proved its case beyond a reasonable doubt." *United States v. Nevils*, 598 F.3d 1158, 1167 (9th Cir. 2010) (en banc). "[E]vidence is insufficient to support a verdict where mere speculation, rather than reasonable inference, supports the government's case." *Id*. A judgment of acquittal is also required where the conduct alleged in the indictment is not made criminal by the statute. *United States v. Ermoian*, No. 1110124, 2013 U.S. App. Lexis 17949 (9th Cir. Aug. 28, 2013).

In this Case, reviewing all the non-objected to evidence and inferences therefrom, in a light of either standard set forth above, there is insufficient evidence for the jury to find Beasley guilty beyond a reasonable doubt; or, more directly, no rational juror in this Case could find Beasley guilty beyond a reasonable doubt of the allegations charged in Counts 1 and 17 of the Indictment and judgment of acquittal as to Beasley on those counts must be entered.

**B.     Judgment of Acquittal as to Beasley on Count 1 Must be Entered.**

The evidence wholly fails to establish Beasley was anything other than a buyer and, allegedly, seller of methamphetamine Beasley purchased from Carroll.  The evidence does not establish that Beasley was a member of any drug conspiracy much less the drug conspiracy charged in Count 1 of the Indictment.  Evidence merely establishing a buyer – seller relationship as to illegal drug transactions is not sufficient under Seventh Circuit precedent to establish that Beasley was a member of the charged conspiracy.  *United States v. Brown*, 865 F.3d 566 (2017); *U.S. v. Brown*, 726 F.3d 993 (2013).

A conspiracy is "a knowing and intentional agreement between two or more people to fulfill a particular criminal objective." *United States v. King*, 627 F.3d 641, 651 (7th Cir. 2010) (quotations omitted).  Applying the Seventh Circuit holdings in *United States v. Colon*, 549 F.3d 565 (7th Cir. 2008) and *United States v. Johnson*, 592 F.3d 749 (7th Cir. 2010), and based on a review of the witness's testimony and exhibits which comprised the only evidence relating to Beasley's purchase of methamphetamine during the conspiracy, this Court must conclude that the Motion be granted.

The Government and the Court both agree that, specifically as to Beasley, the jury in this Case should be instructed as to the nature of a buy – sell agreement.  Specifically, the jury will receive the following Seventh Circuit pattern instruction:

> "A conspiracy requires more than just a buyer-seller relationship between a defendant and another person. In addition, a buyer and seller of controlled substances do not enter into a conspiracy to distribute controlled substances simply because the buyer resells the controlled substance to others, even if the seller knows that the buyer intends to resell the controlled substance. To prove a conspiracy, the government must prove that a buyer and seller had the joint criminal objective of further distributing controlled substances to others."

Court's proposed (and unanimously agreed to) final instruction no. 36.

Even though there is no evidence, at all, that Beasley was anything other than a cash buyer and seller of methamphetamine from Carroll, the Seventh Circuit has held that evidence sufficient to distinguish a conspiracy from a non-conspiratorial wholesale buyer-seller relationship could include evidence of "(i) sales on credit or consignment, (ii) an agreement to look for other customers, (iii) a payment of commission on sales, (iv) an indication that one party advised the other on the conduct of the other's business, or (v) an agreement to warn of future threats to each other's business stemming from competitors or law enforcement authorities." *Johnson*, 592 F.3d at 755-56 citing *United States v. Colon*, 549 F.3d 565, at 568-70 (7th Circ. 2008). None of that such evidence exists, as to Beasley, in this Case. To the contrary, in the light most favorable to the Government, the evidence as to Beasley consists of three (3) cash transactions, over an eight (8) day period; nothing more.

The decision in *Johnson*, incorporating the Court's earlier analysis in *Colon*, provides that:

> "… If the prosecution rests its case only on evidence that a buyer and seller traded in large quantities of drugs, used standardized transactions, and had a prolonged relationship, then the jury would have to choose between two equally plausible inferences. On one hand, the jury could infer that the purchaser and the supplier conspired to distribute drugs. On the other hand, the jury could infer that the purchaser was just a repeat wholesale customer of the supplier and that the two had not entered into an agreement to distribute drugs to others. In this situation, the evidence is essentially in equipoise; the plausibility of each inference is about
>
> the same, so the jury necessarily would have to entertain a reasonable doubt on the conspiracy charge. ... Absent some other evidence of a conspiratorial agreement to tip the scales, the jury must acquit. Otherwise, the law would make any "wholesale customer of a conspiracy ... a co-conspirator per se." *Colon*, 549 F.3d at 569.

*Johnson*, 592 F.3d at 755 (additional internal citations omitted) (emphasis added).

11

In *Colon*, the Court found that "in every case [the] factors [indicative of participation in a conspiracy] have to be placed in context before an inference of participation in a conspiracy can be drawn." *Colon*, 549 F.3d at 568 (citations omitted). However, the factors that the Government relied upon in *Colon* to establish participation in a drug conspiracy, rather than a buyer-seller relationship, were all found lacking because they would all be equally true of a buyer-seller relationship, i.e., (i) the use of code names, (ii) prolonged cooperation, (iii) repeated transactions, (iv) purchases in wholesale quantities, (v) a shared understanding that the heroin purchased would be re-sold, and (vi) a regular and standardized method of dealing evidencing mutual trust. Id. "Not only is a sale by a wholesaler to a retailer consistent with an arms' length relationship rather than being proof of a conspiracy to resell drugs; repeated transactions between a seller and a buyer are likewise consistent with such a relationship." *United States vs. Colon*, 549 F.3d 565, 568-69 (7th Cir. 2008). Even circumstantial evidence as to Beasley's involvement in the charged conspiracy is wholly lacking, here.

It is clear from the Government's own evidence that Carroll never fronted any narcotics to Beasley. See Ex A (Government Ex. 294). The discussion between Carroll and Beasley at pages 2-3 of Exhibit A (Government Ex. 294) demonstrates that Beasley was only purchasing methamphetamine from Carroll for case on the barrel. See Ex. A at pp. 2-3. In fact, Carroll tells Beasley "… you don't owe me no 700 hundred …" and Beasley acknowledges by telling Carroll he doesn't owe anyone any money. Ex. A, p. 2. Then, Beasley and Carroll go on to negotiate the price on two (2) ounces of methamphetamine with Carroll ultimately agreeing to sell both ounces for $700. See Ex. A, p. 3.

To summarize, the evidence received by the Court at the trial in this case, in the light most favorable to the Government, at best establishes the following:

(i) Other than Carroll, Beasley had no association, at all, with any of the other charged conspirators or co-defendants on trial with Beasley now;

(ii) Beasley paid only cash, on the barrel, the for a total of twelve (12) ounces of methamphetamine;

(iii) No evidence from any of the hours long wire taps that were introduced of Beasley using "drug code" or any other language indicative of his participation in the charged conspiracy;

(iv) No evidence of controlled buys of methamphetamine from Beasley or anyone alleged to be selling methamphetamine on Beasley's behalf;

(v) No evidence of telephone communications or transactions, of any kind, between Beasley and co-conspirators other than Carroll;

(vi) No evidence of any other communications (i.e. text messages or other), between Beasley and co-conspirators other than Carrol;

(vii) No evidence of Beasley warning co-conspirators of the presence of law enforcement, or vice versa, despite the fact that Beasley was arrested on September 11, 2017, more than two (2) months prior to the other co-conspirators' arrest in this Case;

(viii) No evidence Beasley provided additional customers or leads for potential customers to any co-conspirator, or vice versa;

(ix) No evidence that Beasley received any measurable benefit from the conspiracy (i.e. – Beasley was never associated with nor were any large sums of cash found on or near Beasley);

(x) No evidence that Beasley associated, in any manner, with any of the co-conspirators in this Case (in fact, there was no evidence, at all, that Beasley associated with or fraternized with Carroll in any manner other than to pay for and pick up methamphetamine which was charged at Carroll's normal, going rates);

(xi) No evidence from any of Beasley's statements over the wiretaps or otherwise that Beasley was intending to purchase methamphetamine from Carroll and, in turn, distribute the same to Beasley's (or, for that matter, other customers of the charged conspiracy) other than the weight itself that Beasley had purchased;

13

  (xii) No evidence that Beasley purchased methamphetamine exclusively from Carroll to further the interests of the conspiracy; and

  (xiii) The charged conspiracy and co-conspirators had an obviously vast customer base for methamphetamine and heroin of its own and no (alleged) customers of Beasley were the same as those of the conspiracy.

Following the holdings of *Johnson* and *Colon*, under any analysis, the evidence is clearly insufficient to prove Beasley guilty, beyond a reasonable doubt, of the conspiracy to distribute methamphetamine charged by the Government in Count 1.

The Seventh Circuit has acknowledged that "[c]ertain characteristics inherent in any ongoing buyer-seller relationship will also generally suggest the existence of a conspiracy." *Johnson*, 592 F.3d at 754. However, "a conviction for conspiracy to distribute drugs cannot be sustained *solely* on circumstantial evidence if the evidence contains no basis for the jury to distinguish the alleged conspiracy from the underlying buyer-seller relationship." *Id*. at 755 (citations omitted) (emphasis in original).

Moreover, the Seventh Circuit Pattern Criminal Jury Instruction 5.10(A) further provides that "to establish that a buyer knowingly becomes a member of a conspiracy with a seller" to distribute controlled substances, the Government must prove that the buyer and seller had the joint criminal objective of distributing heroin to others. (2012 rev. Feb. 2013). There was no evidence offered that any other alleged co-conspirator conspired or worked with Beasley, Carroll included, to advance any joint business enterprise to re-sell the twevle (12) ounces of methamphetamine allegedly sold to Beasley.

The evidence on which the government relied at trial, as outlined previously, consisted only of the quantity/course of dealing and sequencing of the purchase transactions. The evidence admitted as to Beasley on Count 1 is clearly insufficient to allow a jury to decide whether a conspiracy which involved Beasley existed.

The Government has failed to meet its burden to allow the case to go to the jury on Count 1 as to Beasley and judgment of acquittal must be entered.

**C.     Judgment of Acquittal as to Beasley on Count 17 Must be Entered.**

Count 17 of the Indictment charges that:

> "On or about September 11, 2017, within the Southern District of Indiana, Indianapolis Division, James O. Beasley, a/k/a Jake, did knowingly and intentionally possess with intent to distribute 50 grams or more of methamphetamine (actual), a Schedule II, Non-Narcotic controlled substance; to-wit, Beasley possessed 50 grams or more of actual methamphetamine with intent to distribute inside of a residence located at 4801 London Drive in Indianapolis, Indiana.   All in violation of Title 21, United States Code, Section 841(a)(l)."

See the Indictment at pp. 12-13.

There simply is no credible evidence that would require the jury to do anything other than speculate that the methamphetamine seized from the 4801 London Drive address was possessed by Beasley.   There was no evidence introduced by the Government, at all, that Beasley was associated with that address, in any way; specifically, (i) there was no evidence that Beasley could have exercised control over the Property even if he intended to (i.e. – no suggestion that Beasley had keys to the Property or had even ever been to the Property); (ii) there was no testimony or evidence that Beasley was ever observed at the Property or that surveillance was done at the Property to attempt to associate Beasley with the Property; (iii) nothing of Beasley's was found at the property (no clothes, no mail, no identification, no bank account information, no utility bills, no phone bills, and no police records that suggest Beasley resided at or even had ever been at the Property); (iv) no identification (official or otherwise) that Beasley was in any way associated with the Property and (v) Koch did not testify to provide the jury with any information as to the nature and circumstances of Beasley's relationship with her (if any existed at all) or that Beasley had ever even stayed at the Property.

And, importantly, heroin was found at the Property in addition to the methamphetamine. Bruce Tr. Test., August 1, 2019. This is important because if the methamphetamine at the Property was the same methamphetamine purchased by Beasley from Carroll, who never sold Beasley heroin, then there is further indication that the methamphetamine found at the Property was not Beasley's.

Because Beasley was not caught in actual possession of the methamphetamine charged in Count 17 in this Case, the Government must prove that Beasley nevertheless "constructively" possessed the methamphetamine. Constructive possession is a legal fiction in which a person is deemed to possess contraband even without immediate physical control of the object. *United States v. Lawrence*, 788 F.3d 234, 240 (7th Cir. 2015) *citing United States v. Griffin,* 684 F.3d 691, 695 (7th Cir. 2012). To prove constructive possession, the Government must establish that Beasley knowingly had both the power and intention to exercise dominion and control over the object, either directly or through others. *Lawrence*, 788 F.3d at 240 *citing Griffin,* 684 F.3d at 695. Not only can possession be actual or constructive it can also be exclusive or joint. *U.S. v. Gilbert,* 391 F.3d 882, 886 (7th Cir.2004). In a light most favorable to the Government, thus, Beasley the jury could (but not without speculation) determine that Beasley jointly possessed the contraband found at the Property with Koch; however, there is nary a shred of evidence that suggests that Beasley and Koch were anything other than acquaintances and, again, there is nothing to suggest that Beasley had any association with or had even ever been to the Property. So, despite the fact that all forms of possession can be proved by direct or circumstantial evidence and the possession charged in this Case under Count 17 could have been joint with

Koch and constructive in nature, no evidence exists, at all, that would allow the jury to do anything other than wildly speculate that Beasley possessed the methamphetamine charged in Count 17 in this Case. *Id.* at 886.

The Seventh Circuit has recently clarified how to determine the substantial connection question in cases where the defendant shares a residence with others.[5] *Lawrence*, 788 F.3d at 240 In such an instance, the Government must demonstrate a substantial connection between the defendant and the contraband. *Griffin,* 684 F.3d at 697. *Griffin* exhaustively examined the Seventh Circuit's law on constructive possession in jointly occupied properties and boiled it down as follows: "[w]hen a defendant jointly occupies a residence, proof of **constructive possession** of contraband in the residence requires the government to demonstrate a 'substantial connection' between the defendant and the contraband itself, not just the residence." *Griffin,* 684 F.3d at 697.   One way to establish such a connection is by demonstrating some conduct that links the individual to the illegal items, but that is not the only way. *Id.* at 696, 698; *U.S. v. Morris,* 576 F.3d 661, 668 (7th Cir.2009).

Proximity to the item, presence on the property where the item is located, or association with a person in actual possession of the item, without more, is not even enough to support a finding of constructive possession. *Morris,* 576 F.3d at 666 citing *Windom,* 19 F.3d at 1200 (citing *United States v. DiNovo,* 523 F.2d 197, 201 (7th Cir.1975)).  Instead, the defendant must exercise dominion and control over the item. *Irby,* 558 F.3d at 654; *Kelly,* 519 F.3d at 361.

---

[5] Again, there is no evidence to even suggest that Beasley shared the Property with Koch. But, the Government clearly is relying on an inference (really, wholesale speculation) that Beasley had some nexus to the Property because he had been arrested with Koch on September 11, 2017.

Finally, the evidence in this Case as to Beasley's possession of the methamphetamine at the Property does not even remotely resemble other Seventh Circuit Cases set forth in the Lawrence Case where constructive possession was determined. *Lawrence*, 788 F.3d at 241-242. Specifically, "…[T]ese facts easily fall into line with others in which we have determined that a defendant had constructive possession of contraband found in a shared residence. *See U.S. v. Reed,* 744 F.3d 519, 526–27 (7th Cir.) *cert. denied,* ––– U.S. –––, 135 S.Ct. 130, 190 L.Ed.2d 99 (2014) (finding sufficient evidence of possession where drugs were found in the nightstand in the master bedroom in a residence shared by several others, where mail with the defendant's name was also found in the nightstand, and where the drugs were in close proximity to other personal effects like shoes and appointment cards belonging to the defendant); *U.S. v. Jones,* 763 F.3d 777, 799–800 (7th Cir.), *vacated, in part, on other grounds,* 774 F.3d 1104 (7th Cir.2014) *cert. denied,* No. 14–9190, ––– U.S. –––, 135 S.Ct. 2068, 191 L.Ed.2d 969, 2015 WL 1539028 (2015) (finding sufficient evidence to support a jury finding of constructive possession where the defendant's cell phone and car were located at a residence the day of and five days before a raid that uncovered crack cocaine in common areas of the house); *U.S. v. Alanis,* 265 F.3d 576, 592 (7th Cir.2001) (finding sufficient evidence for a jury determination of constructive possession of a gun in a shared bedroom where the police found the gun in a nightstand next to the defendant's bed, with his eyeglasses, clothing, and wallet nearby); *U.S. v. Richardson,* 208 F.3d 626, 628, 632 (7th Cir.2000) (finding sufficient evidence for jury determination of constructive possession of a gun where the gun was on a bed along with envelopes addressed to the defendant and prescription medications with his name and the same address on the labels); *U.S. v. Kitchen,* 57

F.3d 516, 519–21 (7th Cir.1995) (finding sufficient evidence for a jury determination of constructive possession in a shared residence where the police found papers and invoices with the defendant's name next to the gun, along with a gold bracelet with his nickname and clothing in his size). …"

As evidenced by the conversation encapsulated in Government's Exhibit 306, a plausible theory can be developed that Beasley sold the methamphetamine he was alleged to have purchased from Carroll to Koch who, in turn, made arrangements to sell the same to a contact of hers.  See Ex. B at 4-6769.  Under this scenario, and, as argued hereinabove, because there is no nexus between the methamphetamine located at London Drive and Beasley, there simply is no evidence that Beasley possessed the methamphetamine charged in Count 17.

Because there is no evidence here that Beasley constructively possessed the methamphetamine charged in Count 17 and, as such, a verdict of acquittal as to Count 17 must be entered on behalf of Beasley.

## IV.  Conclusion.

The Motion for Judgment of Acquittal under Fed. R. Crim. P. 29(c) as to James Beasley on Counts 1 and 17 of the Superseding Indictment should be GRANTED and for all other just and proper relief in the premises.

Dated:  Indianapolis, Indiana  
       August 29, 2019

SOVICH MINCH, LLP

/s/ *Theodore John Minch*
_____
Theodore J. Minch, Attorney No. 18798-49  
445 North Pennsylvania, Suite 405  
Indianapolis, Indiana 46204  
Tel: (317) 939-1050  
Email:  timinch@sovichminch.com

*Counsel for James Beasley, Defendant*

## CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing was forwarded this day to the following party representatives for Government and Co-Defendants via electronic mail and this Court's electronic filing system this 29th day of August, 2019:

Bradley Blackington, Esq.
bradley.blackington@usdoj.gov

Lindsay Karwoski, Esq.
lindsay.karwoski@usdoj.gov

John T. Tennyson, Esq.
jtennyson@nashville-law.com

Joshua S. Moudy, Esq.
josh@kammenlaw.com

Kenneth Lawrence Riggins, Esq.
Kennethriggins@yahoo.com

Thomas A. Brodnik, Esq.
thomas.a.brodnik@msth.com

Maria G. Lupita Thompson, Esq.
lupita@thompsonlawllc.legal

Finis Tatum, IV, Esq.
ftatum@glaserebbs.com

/s/ Theodore J. Minch
Theodore J. Minch (IN#18798-49)
SOVICH MINCH, LLP
*Attorneys for James Beasley, Defendant*